**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

LUCILLE TEBO                                                                                   PLAINTIFF

V.                                                                           CAUSE NO. 3:04cv360WS

JOAN SONNIER, IN HER INDIVIDUAL
CAPACITY AND IN HER OFFICIAL CAPACITY
AS AN EMPLOYEE AND MENTAL HEALTH
PROFESSIONAL FOR REGION 8 MENTAL
HEALTH-MENTAL RETARDATION COMMISSION;
REGION 8 MENTAL HEALTH-MENTAL
RETARDATION COMMISSION                                                      DEFENDANTS

**ORDER**

Before this court are plaintiff Lucille Tebo's [hereinafter Lucille[1]] motion to strike designation of expert witness [docket # 182], and a motion for summary judgment from each of the defendants, namely from: Region 8 Mental Health Center [docket # 159], and Dr. Joan Sonnier [docket # 166]. Defendants filed their motions for summary judgment under the auspices of Rule 56(b) and (c),[2] Federal Rules of Civil Procedure. Plaintiff opposes these motions. Various motions, to wit: motions in limine [docket # 311] and a motion to strike plaintiff's supplemental exhibit [docket # 319] filed by then-

---

[1] Out of respect, this court hesitates to use a first name, but does so relative to the parties herein because four of the individuals have the same last name.

[2] Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, the following:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

defendants Cary and Kenneth Tebo are now moot, as these defendants have been dismissed from this case.

## Facts and Procedural History

Plaintiff Lucille Tebo married Thurman Tebo on May 13, 1989. Thurman has two sons, Kenneth and Cary Tebo, from a previous marriage. Lucille received money in a series of settlements,[3] proceeds of which were used to purchase a home and property. The deed was in both names. Lucille and Thurman lived together during the events in 2003 that form the basis of this case but have since divorced.

Lucille alleges marital conflict ensued when she refused Thurman's request to add his son's names to the property deed. Depo. of Lucille Tebo, p. 35. On May 14, 2003, Kenneth and Cary were at the barn with their father, working on a tractor. *Id*. at p. 49. Lucille directed her stepsons to leave her property, threw a telephone at Cary, and threatened to kill him, although she later stated she "didn't mean it." *Id.* at p. 118. Her stepsons then left. That night, Lucille paced the hallway and repeatedly hit the walls of the room where Thurman was sleeping. *Id*. at p. 115.

The following day, May 15, Kenneth and Cary contacted Sheriff Tom Royals for advice. Sheriff Royals called defendant Joan Sonnier [hereinafter Sonnier], a crisis specialist employed by defendant Region 8 Mental Health Services [hereinafter Region 8]. Sheriff Royals and Sonnier met with the Tebo men. Sonnier suggested the men file

---

[3]Lucille's residence from her first marriage burned and she received $30,000 in insurance proceeds, then sold the land for $35,000. The café she and her first husband owned also burned and she received $35,000 in insurance proceeds and sold the land for an additional $11,000 or $12,000. Finally, Lucille received a $30,000 wrongful death settlement from the death of her first husband, Mr. Cook.

paperwork at the Simpson County Courthouse to have Lucille undergo a mental evaluation.[4]  Sonnier and Sheriff Royals also spoke to Lucille.  Sonnier told Lucille that the Tebo men felt she needed help.  Depo. of Lucille Tebo at p. 51.  Sonnier did not mention civil commitment but told Lucille that she "had to go" to River Regions Hospital for three days.  *Id.* at pp. 51.  After Lucille refused treatment, Sonnier stated she would return the next day with a "lady from River Regions."  *Id.* at p. 53.

Kenneth and Cary went to the courthouse, where the deputy clerk filled out the evaluation form based on information the two men provided.  Kenneth Tebo depo., pp. 9-11, 36-37; Carey Tebo depo., pp. 26, 33-34.  The paperwork filed with the court lists the following grounds for evaluation: "throwing things, pitching fits, not sleeping, danger to self and others."  Lucille now admits to throwing the phone, voicing threats against Carey Tebo's life, and also pacing and pounding on the wall the night of May 14, 2003, in an effort to prevent Thurman from sleeping.

On May 16, 2003, Sonnier asked Michelle Dukes, an employee of River Region Medical Corporation, to determine whether River Region could evaluate and/or treat Lucille.  Sonnier, Dukes, and Sheriff Royals met with Lucille at the Tebo house.  Lucille refused to go to River Region for inpatient evaluation.  Depo. of Lucille Tebo at p. 61.  Sonnier next told Lucille that she would have to see two doctors,[5] after which Lucille

---

[4]Miss. Code Ann. §§ 41-21-61 through 107 regulate both voluntary and involuntary civil commitment procedures for persons in need of psychiatric treatment.  § 41-21-65 allows "any relative of the person, or any interested person . . ." to file an affidavit with "the clerk of the chancery court of the county in which the person alleged to be in need of treatment resides" setting out the facts and observed behaviors that indicate the need for treatment.

[5]Miss. Code Ann. §§ 41-21-67outlines proceedings upon affidavit.  If sufficient facts are set out to support the need for treatment, the chancellor orders pre-evaluation screening and appoints two physicians, or one physician and a psychologist, to conduct a physical and mental

3

replied that she was not crazy and refused to leave with Sonnier. *Id.* at p.67.

Sonnier allegedly made appointments for Lucille to be evaluated by two physicians, Drs. Holbrook and Bush, on Monday, May 19, 2003. *Id.* at p. 63, 73.[6] Sonnier spoke by telephone with Lucille's brother, Vick Traxler, who agreed to take her. *Id.* Sonnier sent the physicians a copy of her pre-evaluation form recommending that both Lucille and Thurman be referred for treatment. Depo. of Kenneth Tebo, p. 9.

That evening Traxler took Lucille to meet with an attorney, Bob Hardin. Lucille advised Hardin that she had not been served with any paperwork. Depo. of Lucille Tebo, p. 88. Hardin was told of the appointments and did not advise Lucille against meeting with the physicians.[7] *Id.* pp. 87-88, 91. On May 19, Traxler took Lucille to the physicians' offices. *Id.* at p. 96. Both physicians met with Lucille; she claims, however, that neither physician performed a comprehensive examination. *Id.* at pp. 99-104.

A hearing scheduled for that afternoon, May 19, was continued after Lucille's

---

examination of the respondent. The physicians appointed may not be related to the respondent or have any interest in the respondent's estate. The clerk also ascertains whether the respondent is represented by an attorney; if not, the chancellor appoints one. If respondent poses an imminent danger to self or others, the chancellor may by civil order or warrant detain the respondent for up to seventy-two hours during the evaluation process.

[6]In plaintiff's supplemental exhibit, an affidavit by Chancery Court deputy clerk Stephanie M. Bryant, Ms. Bryant asserts that it was she, not Sonnier, who chose the physicians and scheduled the appointments, and that she spoke with Lucille and her attorney about the appointments. This creates a factual dispute as to Sonnier's role in obtaining the evaluations.

[7]Miss. Code Ann. § 41-21-69 grants a respondent the rights to be told the purpose of the examination, refuse to answer questions, and have an attorney present during examination. Lucille knew the purpose, voluntarily spoke with the physicians, and met with her attorney prior to the examinations. Her attorney advised her to keep the appointment and was not present.

attorney objected to a Special Master[8] conducting the hearing.  Prior to any subsequent hearing, Thurman filed for divorce and Kenneth and Cary withdrew their affidavit.  Upon withdrawal of the affidavit, the proceeding was finally dismissed.

## Law and Analysis

Plaintiff filed this lawsuit on May 14, 2004, and amended her complaint on November 4, 2004.  Lucille alleged a civil conspiracy to have her committed, resulting in the following claims: violation of both procedural and substantive due process rights, malicious prosecution, intentional infliction of emotional distress, and negligence.

### *Good Faith Immunity*:

Defendants have asserted that they are entitled to good faith immunity under Mississippi state law.  A person who acts in good faith in the evaluation process set forth "under the provisions of sections 41-21-61 to 41-21-107, shall incur no liability, civil or criminal, for such acts."  Miss. Code Ann. § 41-21-105(1).  Civil suit against a state actor for acts committed within the scope of employment can only lie for "wilful or malicious acts or acts of gross negligence."  *Id.* at (2).

Defendant Sonnier advised the Tebos regarding the civil commitment process; contacted a private facility, River Region, to evaluate Lucille; assisted with arranging appointments for physician evaluations; and, provided to the chancery court her assessment of Lucille.  She claims these acts fell within the scope of her employment.

Sonnier's initial response to a request for assistance by Sheriff Royals and

---

[8]The objection was based upon Miss. Code Ann. § 41-21-73, providing for a hearing before the chancellor.  An objection was registered to having the Special Master conduct the hearing, and proceedings were continued to permit the chancellor to conduct the hearing.

concerned family members falls securely within her employment duties.  The court finds it troubling, however, that Sonnier subsequently undertook actions which under the governing statute are the province of the chancellor.  Evaluations by community mental health agencies are to be conducted, not upon filing of an affidavit, but upon the chancellor's issuance of a writ ordering the evaluations.  As the state actor, Sonnier must not have acted wilfully or with malice, or engaged in acts of gross negligence.  Sonnier's level of knowledge and understanding of her role, as well as her state of mind in carrying out these acts in the absence of a valid writ, present factual issues which preclude an award of good faith immunity.

### Qualified Immunity:

Defendant Sonnier next asserts a claim of qualified immunity against individual suit for acts committed in her official capacity as an employee of Region 8.  Qualified immunity shields a government official from civil liability for damages resulting from the official's objectively reasonable performance of discretionary duties.  *Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002).  Qualified immunity will not extend to acts outside the scope of discretionary authority.  *Brooks v. George County, Mississippi*, 84 F.3d 157, 165-65 (citing *Cronen v. Texas Dept. of Human Services*, 977 F.2d 934, 939 (5th Cir. 1992)).  Where Mississippi law imposes a non-discretionary duty, an individual may not claim qualified immunity for a violation of the statute.  *Id.* at 165 (holding that a sheriff with a state law mandatory duty to maintain work records may not claim qualified immunity for a failure to do so).  Mississippi law provides Sonnier with a statutory duty to assess an individual for civil commitment proceedings.  Sonnier's obligation to

provide the court with this assessment is ministerial, not discretionary, and only arises after the chancellor issues a writ ordering an assessment. Because Sonnier's acts, taken prior to issuance of a writ, may fall outside the scope of her discretionary authority, she is not entitled to an assertion of qualified immunity.

## **Conclusion**

Under Mississippi law, Sonnier is not entitled to immunity. The court finds factual disputes which preclude summary judgment. Therefore, defendants motions for summary judgment [159, 166] are denied. Plaintiff's motion to strike defendant's expert witness [182] is denied. The remaining motions [311, 319], having been filed by persons no longer parties to this lawsuit, are moot and therefore denied.

SO ORDERED AND ADJUDGED, this the 30th day of September, 2006.

s/ HENRY T. WINGATE

CHIEF UNITED STATES DISTRICT JUDGE

Civil Action No. 3:04cv360WS
Order